IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TROY CABIBI,<br><br>                Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO VACATE**<br><br>Case No. 2:13-cv-00006-DN<br><br>District Judge David Nuffer |

On July 3, 2012, Mr. Troy Cabibi pled guilty to three charges: (1) assaulting a federal officer; (2) discharging a firearm during a crime of violence; and (3) possession of a firearm by a convicted felon. He was sentenced to 240 months in prison and did not appeal this sentence. However, in January 2013, Mr. Cabibi filed the instant Section 2255 Motion to Set Aside, Vacate, or Correct Sentence ("Motion to Vacate" or "Motion").[1] He seeks downward adjustment of his sentence.

The United States was ordered to file a response to Mr. Cabibi's Motion to Vacate, which it did in April 2013.[2] The United States argues that Mr. Cabibi's Motion should be denied. For the reasons discussed more fully below, the United States is correct and Mr. Cabibi's Motion is DENIED.

---

[1] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion to Vacate" or "Motion"), docket no. 1, filed January 3, 2013.

[2] Response of United States to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (2255) ("Response"), docket no. 7, filed April 30, 2013.

## BACKGROUND

On July 3, 2012, Mr. Troy Cabibi entered a Statement in Advance of Plea of Guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) ("Statement").[3] In the Statement, Mr. Cabibi admitted the following facts:

> [O]n August 26, 2010, I was at my home in South Salt Lake City, Utah, when certain individuals came to my door and knocked. At that time, I had an outstanding warrant for my arrest. When the individuals at the door attempted to enter my home, I intentionally fired on them. I admit that I had no legal justification for that action. . . . I admit that the individuals I fired upon were federal officers [and] [o]ne of those officers . . . did in fact sustain a life-threatening injury which has caused permanent damage. . . . I admit that the weapon I used to shoot at the officers was a .45 caliber Ruger semi-automatic weapon which was not manufactured in the State of Utah. I further admit that at the time I was in possession of that weapon, I had previously been convicted of a crime carrying a term of imprisonment of more than one year.[4]

The Statement also made clear that:

    1.    Mr. Cabibi was pleading guilty to three charges: (1) Assault on a Federal Officer, 18 U.S.C. § 111(a)(1); (2) Discharging a Firearm During a Crime of Violence, 18 U.S.C. § 924(c); and (3) Possession of a Firearm by a Convicted Felon, 18 U.S.C. § 922(g)(1).[5]

    2.    His attorney had explained the nature of the charges against him, and he had the opportunity to discuss the nature of the charges with his attorney.[6]

    3.    He understood the charges and the elements the government would be required to prove in order to convict him.[7]

---

[3] Statement by Defendant in Advance of Plea of Guilty Pursuant to Fed. R. Crim. P. 11(c)(1)(C) ("Statement"), Case no. 2:10-cr-01024-CW, docket no. 77, filed July 3, 2012.

[4] *Id.* at 4, ¶ 11.

[5] *Id.* at 1, ¶ 1.

[6] *Id.*

[7] *Id.*

4. The maximum possible penalty for Count 1 was twenty years' imprisonment, a fine of up to $250,000, and a term of supervised release up to three years.[8]

5. The maximum possible penalty for Count 2 was ten years' imprisonment to be run consecutively to any sentence imposed for Count 1, plus a term of supervised release up to five years.[9]

6. The maximum possible penalty for Count 3 was ten years' imprisonment, a fine of up to $250,000, and a term of supervised release up to three years.[10]

7. He understood his actual sentence could differ from any calculation by the United States or any suggestion contained in the Sentencing Guidelines, and he had discussed those procedures with his attorney.[11]

8. The sentence imposed by the Court would be 240 months imprisonment, and agreed that "240 months is a reasonable sentence."[12]

9. No one had made threats, promises, or representations to him that caused him to plead guilty.[13]

10. He had discussed the case and the plea with his lawyer as much as he wished, and had no additional questions.[14]

11. He was satisfied with his lawyer.[15]

---

[8] *Id.* at 2, ¶ 2(a).
[9] *Id.*
[10] *Id.*
[11] *Id.* at 2, ¶ 3.
[12] *Id.* at 5, ¶ 12(C)(1).
[13] *Id.* at 6, ¶ 2.
[14] *Id.* at 6, ¶ 4.
[15] *Id.* at 6, ¶ 5.

12. He had no mental reservations concerning the plea.[16]

13. He did not wish to make any changes to the plea because he agreed with the terms and all of the statements contained therein.[17]

Mr. Cabibi was also charged with Attempted Murder, but this charge was dismissed as part of the plea agreement. If Mr. Cabibi had proceeded to trial and been found guilty of Attempted Murder, he would have faced a very long sentence. Under the Sentencing Guidelines, the base offense level for Attempted Murder would have been 33, plus a four-level enhancement for the victim's permanent or life-threatening bodily injury, for a total offense level of 37. Given his total criminal history score of five, which establishes a criminal history category of III, the Attempted Murder charge would have carried with it a guideline range of 262-327 months, plus a mandatory consecutive sentence of 120 months for the Discharging a Firearm charge, 18 U.S.C. § 924(c), for a total range of 382-457 months.

Mr. Cabibi ultimately pled guilty to three charges, consistent with the Statement: (1) assaulting a federal officer; (2) discharging a firearm during a crime of violence; and (3) possession of a firearm by a convicted felon. He was sentenced to 240 months in prison and did not appeal his sentence. However, he now seeks downward modification of his sentence by filing the instant Motion to Vacate.

## DISCUSSION

Mr. Cabibi asserts two grounds for decreasing his sentence. The first is ineffective assistance of counsel[18] and the second is that he has "new evidence pertaing [sic] to the case that

---

[16] *Id.* at 7, ¶ 7.

[17] *Id.* at 7, ¶ 8.

[18] Motion at 5.

4

may suport [sic] cause for lesser sentece [sic]."[19] He believes these two grounds constitute a valid basis for lowering his sentence. Mr. Cabibi is incorrect.

**Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, the defendant must demonstrate that (1) his counsel's performance was deficient, and that, (2) as a result of those deficiencies, the defendant was prejudiced.[20] The burden is on the defendant to demonstrate that his attorney's performance was unreasonable under prevailing professional norms.[21] To demonstrate prejudice, the second prong of the *Strickland* test, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[22] "Judicial scrutiny of counsel's performance must be highly deferential."[23] "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[24]

Mr. Cabibi makes several arguments about why he believes his counsel was deficient. His original Motion makes this accusation, as does an additional document filed three months after the Motion.[25] None of his arguments, however, establish that his counsel was deficient or that he was prejudiced by counsel.

First, Mr. Cabibi argues that he "was not properly informed on sentencing guidelines" and, instead of pleading to 240 months imprisonment as he did, he would have pled to "the 161-

---

[19] Motion at 6.

[20] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[21] *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).

[22] *Strickland*, 466 U.S. at 694.

[23] *Id.* at 689.

[24] *Id.* at 690.

[25] Lodged Documents, docket no. 6, filed April 3, 2013.

171 months" if properly informed.[26] Mr. Cabibi provides no further facts to support this argument. Instead, he simply argues that he "did not have the information before and was improperly informed."[27] Tellingly, Mr. Cabibi admits in his supplementary documents that his counsel advised him that he faced a possible "30 year" sentence and advised him that sentences could run consecutively.[28] These statements, even if it were established that they were said, donot indicate that Mr. Cabibi was improperly informed with regard to sentencing. It is true that Mr. Cabibi faced at least 30 years in prison if he had gone to trial and was convicted for Attempted Murder. It is also true that he could have served consecutive sentences if he was convicted for Attempted Murder. Therefore, Mr. Cabibi's counsel wisely assisted Mr. Cabibi in accepting a plea agreement of 240 months imprisonment, which avoided concurrent sentences and avoided a thirty-year sentence. This advice is not deficient.

Next, Mr. Cabibi contends that his counsel was deficient because he failed to file a motion to compel to obtain medical records of the victim and failed to pursue a *Brady* violation against the government.[29] Mr. Cabibi apparently now seems to believe that it may not have been his bullet that hit the victim, so his attorney should have sought medical records about the victim's wounds and should have attacked the United States for failing to produce more information about the investigation of the shooting.[30] However, as the United States points out, Mr. Cabibi has already admitted to intentionally firing upon federal officers and there is no indication the events took place in a manner contrary to Mr. Cabibi's admissions in the plea agreement.

---

[26] Motion at 6.

[27] *Id.*

[28] Lodged Documents at 1, docket no. 6, filed April 3, 2013.

[29] *Id.*

[30] *Id.*

The United States also points out that "in discovery, the government provided photographs of the victim's injuries and detailed medical records relating to the injury from the responding fire department."[31] Further, "the government provided 240+ pages of discovery related [to] the shooting, including photographs of every gun related to every officer on the scene, and confirmation that no weapon had been fired on the scene except for those fired by Troy Cabibi."[32] Thus, there was no basis for Mr. Cabibi's counsel to file a motion to compel or pursue a *Brady* violation against the government because the information that would have been sought under such actions was already provided. It is presumed that Mr. Cabibi's counsel recognized this and used his professional judgment to conclude that an attempt for additional disclosures would not have been helpful to the case.[33]

Finally, Mr. Cabibi asserts that his attorney should have filed a motion to suppress the arrest warrant because the warrant "was issued for a DUI that I was never charged for."[34] Mr. Cabibi explains that he talked to his attorney about this, and his attorney said he "can't do it because the government will get mad an [sic] he don't [sic] want to do it."[35] Without a statement from the attorney, it is not clear why the attorney chose not to file a motion to suppress. Lack of clarity, however, does not establish inefficient representation. It must be presumed that counsel rendered adequate assistance and chose not to file a motion to suppress in the exercise of his reasonable professional judgment.[36] Mr. Cabibi's assertions do not overcome that presumption.

---

[31] Response at 16.

[32] *Id.*

[33] *Strickland*, 466 U.S. at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.").

[34] Lodged Documents at 2, docket no. 6, filed April 3, 2013.

[35] *Id.*

[36] *Strickland*, 466 U.S. at 690.

Perhaps the most significant defect in Mr. Cabibi's current assertions about the ineffectiveness of his counsel is that none of his arguments are supported by any factual record. There is no affidavit, sworn statement, or other evidence to support an ineffective assistance of counsel claim. This is contrary to guiding rules, which state that motions filed under 28 U.S.C. § 2255 must "state the facts supporting each ground" and must be "signed under penalty of perjury by the movant or by a person authorized to sign it for the movant."[37] Because Mr. Cabibi's allegations of ineffective assistance are not supported by verifiable evidence, they lack credibility and are not convincing.

Moreover, Mr. Cabibi's sworn plea agreement directly contradicts his current unsworn statements that his counsel was ineffective. In his plea agreement, Mr. Cabibi admitted that his attorney had explained the nature of the charges against him, and he had the opportunity to discuss the nature of the charges with his attorney;[38] that he understood his actual sentence could differ from any calculation by the United States or any suggestion contained in the Sentencing Guidelines, and he had discussed those procedures with his attorney;[39] that no one had made threats, promises, or representations to him that caused him to plead guilty;[40] that he had discussed the case and the plea with his lawyer as much as he wished, and had no additional questions;[41] that he had no mental reservations concerning the plea;[42] that he did not wish to make any changes to the plea because he agreed with the terms and all of the statements

---

[37] Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 2 (2010); *see also* DUCivR 5-3(a) (requiring § 2255 motions to be in writing, signed, and verified, and to comply with 28 U.S.C. § 2225).

[38] Statement at 1, ¶ 1.

[39] *Id.* at 2, ¶ 3.

[40] *Id.* at 6, ¶ 2.

[41] *Id.* at 6, ¶ 4.

[42] *Id.* at 7, ¶ 7.

contained therein;[43] and that he was satisfied with his lawyer.[44] Accordingly, there is no reason to conclude that Mr. Cabibi's attorney performed deficiently or that Mr. Cabibi was prejudiced by the representation of counsel in his criminal matter. Therefore, Mr. Cabibi's ineffective assistance of counsel argument fails.

### New Evidence

Mr. Cabibi argues that his Motion should be granted because he has new evidence that "may suport [sic] cause for lesser sentece [sic]."[45] No further argument or facts are presented. Rather, Mr. Cabibi simply states that he "just barely" received the information and did not have it before.[46] Even construing this argument most liberally, it is impossible to determine whether the alleged "new evidence" is actually new evidence or whether it is relevant in any way to the case. Had Mr. Cabibi followed the instructions on his § 2255 form to state the facts supporting his argument, it might have established grounds for his Motion. However, by simply arguing that new evidence exists without disclosing any facts, Mr. Cabibi has not established grounds for his Motion to Vacate. Therefore, because there are no factual allegations to accompany his argument, and because it is impossible to determine whether the alleged evidence is actually new or is relevant to the case, this argument fails.

### CONCLUSION AND ORDER

Because "the motion and the files and records of the case conclusively show that prisoner is entitled to no relief,"[47] no evidentiary hearing is necessary.[48] In determining whether an

---

[43] *Id.* at 7, ¶ 8.

[44] *Id.* at 6, ¶ 5.

[45] Motion at 6.

[46] Motion at 8.

[47] 28 U.S.C. § 2255(b).

[48] *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004).

evidentiary hearing is appropriate, the "probative force of the newly presented evidence" must be assessed.[49] The movant "must identify evidence that demonstrates that he probably would not have been found guilty beyond a reasonable doubt by any reasonable juror."[50] Mr. Cabibi presents no new evidence and is therefore not entitled to an evidentiary hearing.

Further, because Mr. Cabibi has failed to show that his Motion to Vacate has any grounds upon which it could be granted under Section 2255,

IT IS HEREBY ORDERED Mr. Cabibi's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody[51] is DENIED.

Dated April 22, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[49] *Id.* at 992 (quoting *Schlup v. Delo*, 513 U.S. 298, 331 (1995)).

[50] *Cervini*, 379 F.3d at 992.

[51] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, docket no. 1, filed January 3, 2013.